UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELVIN SUCHITE-MENDEZ,<br><br>              Petitioner,<br>    v.<br><br>MARKWAYNE MULLIN et al.,<br><br>              Respondents. | CASE NO. 2:26-cv-01691-DGE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) BY ORDERING A NEW BOND HEARING |

This matter comes before the Court on Petitioner Elvin Suchite-Mendez's petition for writ of habeas corpus.  (Dkt. No. 1.)  Having reviewed the petition, the return memorandum (Dkt. No. 10), the traverse (Dkt. No. 13), and the remainder of the record, the Court GRANTS the writ by ordering a new bond hearing.

## I      BACKGROUND

### A.  Factual Background

Petitioner is a native and citizen of Guatemala.  (Dkt. No. 11-1 at 2.)  He entered the United States on an unknown date and at an unknown location "without being admitted or

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) BY ORDERING A NEW BOND HEARING - 1

inspected by an Immigration Official."[1]  (Dkt. No. 11-3 at 6.)  Nothing in the record details Petitioner's whereabouts or activities between September 2015 and January 2026.  Petitioner states he is a "longtime resident" of Long Beach, California and is married with a United States citizen child.  (Dkt. No. 1 at 10.)  Petitioner has "deep ties to his local community and church[.]" (*Id.*)

On January 17, 2026, Border Patrol Agent Francisco J. Lopez II was "conducting immigration enforcement operations" in Compton, California, "in support of Operation At Large."[2]  (Dkt. No. 11-3 at 4.)  The City of Compton was "identified as a city with a large presence of illegal aliens and illegal activity pertaining to immigration law."  (*Id.*)  The immigration agents were engaged in "roving patrol operations" because noncitizens arrested in the past identified "they had been living and working illegally in the area."  (*Id.*)  Based on prior operations, noncitizens had previously been arrested at "car washes, public vendor stands, Home Depot areas, and various other locations."  (*Id.*)  While engaged in a roving patrol, Agent Lopez saw "one subject, later identified as [Petitioner, at an] intersection . . . dressed in attire consistent with day laborers [he has] apprehended in the past."[3]  (*Id.*)  Agent Lopez vaguely states he approached Petitioner "with the intention of having a conversation . . . and subsequently

---

[1] Petitioner alleges he has "continuously resided" in the United States "since approximately September 1, 2015."  (Dkt. No. 1 at 10.)

[2] Operation At Large is a nationwide operation to "significantly increase . . . arrests" of noncitizens.  (Dkt. No. 11-3 at 3.)  It prioritizes regions with the "highest concentrations of executable final orders" of removal, which, relevant here, includes the Los Angeles area (Orange County, Los Angeles County, Riverside County, and San Bernadino County).  (*Id.* at 4.)

[3] The nature and description of Petitioner's apprehension via Operation At Large raises serious concerns given the lack of a particularized basis for approaching Petitioner.  *See Noem v. Vazquez Perdomo*, 146 S. Ct. 1, 6 (2025) (mem.) (Sotomayor, J. dissenting) ("We should not have to live in a country where the Government can seize anyone who looks Latino, speaks Spanish, and appears to work a low wage job.").

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) BY ORDERING A NEW BOND HEARING - 2

conducting an immigration inspection." (*Id.*)  Petitioner states he was "removing graffiti from the church where he volunteers[]" when he was contacted by Agent Lopez.  (Dkt. No. 1 at 10.)

Agent Lopez identified himself and asked Petitioner for immigration documents and Petitioner told Agent Lopez "he did not have immigration documents to reside in the United States legally." (Dkt. No. 11-3 at 4.)  Agent Lopez placed Petitioner in an "unmarked government vehicle for further questioning" and after determining he was unlawfully present in the country, arrested Petitioner.  (*Id.* at 5; *see also* Dkt. No. 11-2 at 2.)  Petitioner was deemed a flight risk because of his "illegal presence" in the country, his "willful disregard" for immigration and criminal laws, and "his ability to disappear into the millions of people living in the Los Angeles area[.]" (Dkt. No. 11-3 at 5.)  He was transported to the Enforcement and Removal Operations ("ERO") office in Los Angeles for "further processing and disposition." (*Id.* at 5–6.)  The same day, Petitioner was issued a Notice to Appear ("NTA") charging him as inadmissible under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182, as a noncitizen allegedly present in the United States without admission or parole. (*See* Dkt. No. 11-1.)

On January 24, 2026, Petitioner was transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he remains detained.  (Dkt. No. 12 at 2.)  On February 27, 2026, Petitioner requested a bond hearing with the Tacoma Immigration Court. (*Id.*)  The hearing was held on March 5, 2026.  (*Id.*; *see also* Dkt. No. 11-4.)  He alleges he presented "substantial evidence" he did not pose a danger to the community, nor a risk of flight. (Dkt. No. 1 at 11.)  The immigration judge nevertheless denied bond and checked the box labeling Petitioner a "Flight Risk." (Dkt. No. 11-4 at 2.)  Petitioner appealed the bond denial to the Board of Immigration Appeals ("BIA") on March 16, 2026; that appeal remains pending.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) BY ORDERING A NEW BOND HEARING - 3

(Dkt. Nos. 1 at 12; 12 at 2.)  On March 17, the same immigration judge issued a bond memorandum, detailing his decision to deny bond in slightly more detail.  (*See* Dkt. No. 11-5.) The memo explains that Petitioner was subject to mandatory detention under INA § 235(b)(2)(A), codified at 8 U.S.C. § 1225, and the immigration judge had no jurisdiction to grant bond; in the alternative, even if the court had jurisdiction, the immigration judge concluded he would nevertheless deny bond because Petitioner "failed to show that he is not a flight risk." (*Id.* at 2.)

The Department of Homeland Security ("DHS") initiated an individual immigration hearing for Petitioner on May 28, 2026.  (*See* Dkt. No. 11-6.)  A different immigration judge than the one who denied bond found Petitioner inadmissible as charged in the NTA and denied Petitioner's request for cancellation of removal for nonpermanent residents pursuant to INA § 240A(b)(1), codified at 8 U.S.C. § 1229a.  (*Id.* at 4–5.)  Petitioner was ordered removed to Guatemala and advised of the penalties for failure to depart pursuant to the removal order.  (*Id.* at 6.)  The immigration judge also granted DHS's motion to pretermit Petitioner's applications for relief.[4]  (*See id.* at 7 (granting motion to pretermit "as it pertains to 8 C.F.R. § 208.6"); Dkt. No. 12 at 3).)  Both Parties reserved their right to appeal, though Petitioner has not yet appealed this decision to the BIA.  (Dkt. Nos. 11-6 at 7; 12 at 3.)

### B.  Procedural History

On May 18, 2026, Petitioner filed a petition for writ of habeas corpus (Dkt. No. 1) and a motion for temporary restraining order ("TRO") (Dkt. No. 2).[5]  Also on May 18, the Court

---

[4] Though it is unclear from the record, the Court presumes the pretermitted claims relate to asylum and withholding of removal.

[5] Petitioner filed a separate habeas petition pro se on May 12, 2026.  *See Suchite Mendez v. ICE Field Office Director*, Case No. 2:26-cv-01651-DGE, Dkt. No. 1.  The Court issued an order *sua sponte* on May 19, 2026, ordering Petitioner to show cause why the case should not be dismissed

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) BY ORDERING A NEW BOND HEARING - 4

issued its standard scheduling order (Dkt. No. 4) and this case was reassigned to the undersigned. (*See* Dkt. No. 7.)  On May 19, 2026, the Court denied Petitioner's motion for TRO as moot because Petitioner sought an order prohibiting Respondents from transferring him outside the Western District of Washington during the pendency of his petition, which as the Court noted, is adequately addressed and protected from by the Court's scheduling order.  (*See* Dkt. No. 8.)  On June 1, 2026, Respondents filed their return (Dkt. No. 10) and on June 8, Petitioner filed his traverse (Dkt. No. 13).

In his habeas petition, Petitioner first argues his detention is governed by 8 U.S.C. § 1226(a), rather than § 1225(b)(2)(A) as Respondents contend.  (Dkt. No. 1 at 15.)  He argues his continued detention violates the Due Process Clause of the Fifth Amendment because he was "subjected to a cursory custody hearing in which the Immigration Judge summarily concluded[] . . . that Petitioner constituted a flight risk that no amount of bond or supervision conditions could reasonably mitigate." (*Id.* at 17.)  Finally, he argues Respondents' detention policy and the "expanded application" of § 1225(b)(2)(A) violates the Administrative Procedure Act ("APA"). (*Id.* at 19.)  He seeks his immediate release, or in the alternative, a "prompt individualized bond hearing before a neutral Immigration Judge[.]"  (*Id.* at 21.)  In response, Respondents argue Petitioner has failed to demonstrate that the prudential exhaustion requirement should be waived, and further, that other adequate statutory remedies exist, which forecloses a claim under the APA.  (Dkt. No. 10 at 6) (citing 5 U.S.C. § 704).  They argue that even if the Court were to reach the merits of Petitioner's arguments, he is not entitled to release, because he received a

as duplicative of the present matter. *Id.*, Dkt. No. 5.  On May 28, the Court dismissed the case without prejudice because Petitioner did not respond.  *Id.*, Dkt. No. 6.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) BY ORDERING A NEW BOND HEARING - 5

constitutionally adequate bond hearing, and an application of the *Mathews* factors shows that Due Process was satisfied.  (*Id.* at 9–17.)

## II   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States."  *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, Case No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241).  Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'"  *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III   DISCUSSION

### A.  Prudential Exhaustion Is Not Required

Respondents argue Petitioner has "failed to demonstrate his entitlement to waiver of [the] prudential exhaustion requirement[]" and has otherwise failed to allege irreparable harm-based support for waiving the requirement.  (Dkt. No. 10 at 6.)  In reply, Petitioner argues the Court should waive any prudential exhaustion requirement because even a later favorable decision from the BIA "cannot restore liberty already lost."  (Dkt. No. 13 at 8.)

Exhaustion of administrative remedies is prudential rather than jurisdictional and may be required where:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) BY ORDERING A NEW BOND HEARING - 6

would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations omitted)).  Exceptions to the exhaustion requirement include "situations . . . where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981).  Similarly, the exhaustion requirement is waived where the petitioner is "challenging issues other than the BIA's ruling on removability." *Laing v. Ashcroft*, 370 F.3d 994, 1001 (9th Cir. 2004) (citing *Marquez v. INS*, 346 F.3d 892 (9th Cir. 2003)).

The first factor weighs against requiring prudential exhaustion.  The Court acknowledges the BIA's general subject matter expertise in immigration bond decisions.  *Aden v. Nielsen*, Case No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019).  But here, Petitioner is raising a constitutional challenge to the adequacy of his bond hearing and whether the immigration judge abused his discretion in finding Petitioner a flight risk, which is an inquiry "better suited to review by the federal courts." *W.T.M. v. Bondi*, Case No. 2:25-cv-02428-RAJ-BAT, 2026 WL 262583, at *2 (W.D. Wash. Jan. 30, 2026); *Soriano v. Hernandez*, --- F. Supp. 3d ----, Case No. 2:26-cv-00900-DGE, 2026 WL 969764, at *3 (W.D. Wash. Apr. 10, 2026) ("[T]he facts in this case are undisputed and the actual issue is whether, as a matter of law, the undisputed evidence presented at the bond hearing could establish that Petitioner posed a flight

risk.").  The BIA's expertise is "unnecessary to generate a proper record or reach a proper decision."  *Soriano*, 2026 WL 969764, at *3.

The second *Puga* factor does not weigh in favor of requiring prudential exhaustion. There is always the risk, as Respondents suggest, that waiving the requirement may "'encourage the deliberate bypass of the administrative scheme.'"  (Dkt. No. 10 at 8) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 882 (9th Cir. 2003)).  But the Court has no reason to believe an immigration judge or the BIA would seriously evaluate whether Petitioner should receive a bond hearing in a situation where the immigration judge has already found Petitioner subject to mandatory detention under INA § 235(b)(2)(A) pursuant to *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).  This is because, despite district courts in this circuit concluding that the reasoning in *Yajure-Hurtado* is flawed, *see Maldonado Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025); *Rodriguez Vaquez v. Bostock*, 802 F. Supp. 3d 1297, 1309 (W.D. Wash. 2025), Respondent's Chief Immigration Judge, Teresa L. Riley, issued guidance on January 13, 2026 informing all immigration judges that *Yajure-Hurtado* remains binding.[6]  Therefore, the notion that others may be encouraged to bypass the administrative process if the prudential exhaustion requirement is waived in this matter is solely because immigration judges continue to automatically deny bond requests premised on *Yajure-Hurtado*.

The third factor weighs against requiring prudential exhaustion because the defect alleged, i.e., the immigration judge's summary finding of flight risk (Dkt. Nos. 11-4, 11-5), is constitutional in nature.  It is therefore unlikely that an appeal to the BIA will permit the agency

---

[6] *Practice Alert: District Court Vacates* Yajure Hurtado, AM. IMMIGR. LAWS. ASS'N (Feb. 19, 2026), https://www.aila.org/library/practice-alert-district-court-vacates-Yajure-Hurtado.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) BY ORDERING A NEW BOND HEARING - 8

to correct a factual or evidentiary oversight by the immigration judge. *E.g.*, *Soriano*, 2026 WL 969764, at \*4; *W.T.M.*, 2026 WL 262583, at \*3.

Even assuming the *Puga* factors weighed in favor of requiring exhaustion, pursuit of administrative remedies in this case would, as already identified, prove to be futile.  Immigration judges continue to apply *Yajure-Hurtado* despite district courts in this circuit concluding it was incorrectly decided.  Undoubtedly, Petitioner's pending appeal before the BIA is futile.  Additionally, given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim.  *See Scott v. Wamsley*, Case No. 2:25-cv-1819, 2025 WL 3514304, at \*4 (W.D. Wash. Dec. 8, 2025) (quoting *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019) ("Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.")).  Accordingly, the Court finds it appropriate to waive any requirement that Petitioner exhaust his administrative remedies before seeking habeas relief.

### B.  Petitioner is Detained Under 8 U.S.C. § 1226(a)

Petitioner argues his detention is governed by § 1226(a), rather than § 1225(b), because he was arrested in Compton, California after residing in the United States for many years, rather than at a border or point of admission.  (Dkt. No. 1 at 17.)  Respondents argue Petitioner is subject to mandatory detention under § 1225(b) because he "was never lawfully admitted, [so] he is properly considered to be an applicant for admission."  (Dkt. No. 10 at 2.)  Curiously, Respondents simultaneously acknowledge Petitioner falls within the Bond Denial Class as defined by *Rodriguez Vazquez*, which applies, among other criteria, to noncitizens detained at the

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) BY ORDERING A NEW BOND HEARING - 9

NWIPC who were "not apprehended upon arrival[.]" 802 F. Supp. 3d at 1309 (describing certified class); (*see also* Dkt. No. 10 at 2). The Court need not dwell on Respondents' argument. For the reasons outlined in *Rodriguez Vazquez*, 802 F. Supp. 3d at 1322–1336, and upheld by other courts in this district, the Court agrees with Petitioner that he is subject to § 1226(a) and not § 1225.

### C. Petitioner's Bond Denial

1. The Court has jurisdiction to review the bond denial.

Respondents argue the Court does not have jurisdiction to review the immigration judge's bond determination. (Dkt. No. 10 at 5.) They argue Petitioner is attempting to "bypass" the appeal process and inviting this Court to substitute its judgment for that of the immigration judge. (*Id.*)

In general, the Court does not have jurisdiction to review discretionary bond decisions. 8 U.S.C. § 1226(e) states, "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." However, § 1226(e) does not preclude "habeas jurisdiction over constitutional claims or questions of law." *Hernandez*, 872 F.3d at 987 (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) ("Although the [immigration judge's] discretionary bond determination was not reviewable in federal court . . . we would have had jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [a noncitizen's] agency proceedings, including any claimed due process violation."). Accordingly, "a district court has jurisdiction to review an [immigration judge's] discretionary bond denial where that bond denial is challenged as legally

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) BY ORDERING A NEW BOND HEARING - 10

erroneous or unconstitutional." *Kharis v. Sessions*, Case No. 18-cv-04800-JST, 2018 WL 5809432 at *4 (N.D. Cal. Nov. 6, 2018) (collecting cases).

Petitioner states he does not challenge any final order of removal nor seek review of the merits of removal proceedings but instead "challenges the legality of his continued detention, the constitutionally deficient custody proceedings resulting in his incarceration, and the prolonged deprivation of liberty caused by the delayed adjudication of his custody appeal." (Dkt. No. 1 at 14.) In other words, Petitioner is not challenging the immigration judge's discretionary judgment but is instead challenging "whether the [judge] provided him with a bond hearing that comports with the constitutional due process protections to which he is entitled." *W.T.M.*, 2026 WL 262583, at *1. Given the nature of Petitioner's challenge, the Court finds it has subject matter jurisdiction over Petitioner's claims.

2. Petitioner is entitled to a constitutionally compliant bond hearing under 8 U.S.C. § 1226(a).

Petitioner argues the immigration judge "summarily concluded" he was a flight risk, and that conclusion "directly contradicted" the available evidence, including "Petitioner's nearly decade-long residence in the United States, his marriage and family ties, his United States citizen child, his church and community involvement, his lack of criminal history, and the availability of a United States citizen sponsor willing to ensure compliance with all conditions of release." (Dkt. No. 1 at 17–18.) An immigration judge may consider the following factors in making bond determinations:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) BY ORDERING A NEW BOND HEARING - 11

immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020).

The habeas court's review of an immigration judge's determination of flight risk is for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 779, 784–785 (9th Cir. 2024); *Anyanwu v. Bondi*, Case No. C25-995-JLR-MLP, 2025 WL 3466910, at *4 (W.D. Wash. Oct. 6, 2025), *report and recommendation adopted*, Case No. C25-0995JLR, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025). When reviewing a determination for abuse of discretion, a court may only determine whether the immigration judge applied the correct legal standard, not reweigh evidence. *Martinez*, 124 F.4th at 785.

The Court concludes the immigration judge's decision to deny Petitioner's bond was improper for two reasons. First, it was legally erroneous to conclude the immigration court lacked jurisdiction to consider Petitioner's bond based on 8 U.S.C. § 1225. *See* Section III(B) *supra*. "The Court finds this erroneous conclusion tainted the immigration judge's consideration of Petitioner's bond request." *Garcia Gabriel v. Hermosillo*, Case No. 2:25-cv-02594-DGE-GJL, 2026 WL 194233, at *4 (W.D. Wash. Jan. 26, 2026). An immigration judge is required to acknowledge eligibility for a bond and then apply the relevant factors. Determining Petitioner was subject to mandatory detention first and then concluding without explanation Petitioner was a flight risk highlights the fact the immigration judge applied an incorrect legal standard when considering Petitioner's bond request.

Second, the record is unclear as to what evidence the immigration judge in fact considered in denying Petitioner's bond request. The immigration did not mention the burden of proof in his written decision; he merely referenced Petitioner's I-213 and made the "alternative

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) BY ORDERING A NEW BOND HEARING - 12

finding" that even if the immigration court had jurisdiction, it would deny bond "because [Petitioner] has failed to show that he is not a flight risk." (Dkt. No. 11-5 at 2.)  This conclusory assertion on its own suggests an abuse of discretion because "[t]he Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors." *Vasquez Lopez v. Hernandez*, --- F. Supp. 3d ----, Case No. C26-0775 TSZ, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026).  Looking to the facts in the I-213, the arresting officer determined Petitioner was a flight risk based on the following considerations: (1) his illegal presence in the United States; (2) his "willful disregard" for immigration and criminal laws; (3) his "ability to disappear into the millions of people living in the Los Angeles area; and (4) agents' "collective belief" Petitioner may abscond if released.  (Dkt. No. 11-3 at 5.)  But as Petitioner points out, "[t]hose facts are not individual indicators of nonappearance[]" and are instead "characteristics shared by countless noncitizens." (Dkt. No. 13 at 7.)  The Court agrees there is nothing unique to Petitioner's circumstances inherent in this evidence; if every noncitizen could be denied bond for those general reasons, there would be no reason to have a bond hearing in the first place.

However, the record in this case is not sufficiently complete for the Court to conclude that *no* rational immigration judge would determine Petitioner to be a flight risk.  In cases where other courts have made this finding, the record provided ample evidence for consideration, but here, the record is scant.  *Cf. Segura Serrano*, 2026 WL 1674357, at 7–8 (discussing evidence of the petitioner's two prior voluntary removals, home ownership, and employment history); *Soriano*, 2026 WL 969764, at *5 (noting the petitioner lived for 20 years at the same address, worked for the same employer for 25 years, and had a child with medical needs and school accommodations, which were supported by record evidence); *Vasquez Lopez,* 2026 WL 984151,

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) BY ORDERING A NEW BOND HEARING - 13

at *3 (explaining that evidence of the petitioner's hospitalization in October 2025 for septic shock and kidney disease and her weakened condition since indicated it was unlikely she would flee).  The Court has no reason to question Petitioner's contentions that he has been residing in the United States since 2015, has a U.S. citizen child, is involved with his community, and has no criminal record (*see* Dkt. Nos. 1 at 10–11; 11-3 at 6), but the record contains insufficient evidence for the Court to definitively conclude the immigration judge's finding of flight risk "lack[ed] any objective rationale."[7]  *Soriano*, 2026 WL 969764, at *5.

As a result, Respondents are ordered to grant Petitioner a new bond hearing under which the immigration judge (1) shall not consider § 1225; and (2) shall consider, as applicable, the normal factors used to make a bond determination as identified in *Rodriguez Diaz* and *In re Guerra*.[8]  *See* Sections III(C)(1)–(2) *supra*.

### D.  Remedy

The Court GRANTS Petitioner's petition for writ of habeas corpus (Dkt. No. 1) by ordering a new bond hearing as follows:

[7] Respondents engaged in a full *Mathews* Due Process analysis to argue that Petitioner's bond hearing was constitutionally adequate.  (Dkt. No. 10 at 10–13.)  But the immigration judge both wrongfully determined Petitioner was subject to mandatory detention and also issued a decision devoid of any explanation of the evidence the immigration judge considered and how he came to the conclusion Petitioner was a flight risk.  (*See* Dkt. No. 11-5 at 2) ("The court makes an alternative finding that, even if the court had jurisdiction to redetermine [Petitioner]'s bond, the court would nevertheless deny the bond because [Petitioner] has failed to show that he is not a flight risk.").  Without any details about what was considered at the bond hearing, Respondents' argument that Due Process was somehow satisfied is unavailing.

[8] A consideration of these factors in this case would identify the following facts, which presumably would be supported by evidence from Petitioner: (1) Petitioner entered the United States in 2015 and has continuously resided in the country since then; (2) Petitioner is married and the father of a U.S. citizen child; (3) Petitioner maintains strong connections to his church and community; (3) Petitioner appears to have no criminal convictions in the United States or elsewhere; and (4) Petitioner apparently has a U.S. citizen sponsor willing to ensure compliance with all conditions of release.  (Dkt. No. 1-1 at 10, 18.)

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) BY ORDERING A NEW BOND HEARING - 14

1. Within **seven (7) days** of receiving Petitioner's request for a new bond hearing, Respondents SHALL either provide Petitioner with a constitutionally adequate bond hearing under 8 U.S.C. § 1226(a) or release him under an appropriate order of supervision.

2. Respondents are ENJOINED from denying Petitioner the ability to be released on bond on the basis that he is subject to mandatory detention under 8 U.S.C. § 1225(b) because Petitioner is not subject to mandatory detention under § 1225(b).

3. The Parties are ORDERED to file a joint status report **fourteen (14) days** from the date of this order confirming compliance with this order.  The status report SHALL detail if and when the ordered bond hearing occurred; if bond was granted or denied; and if denied, the reasons for that denial.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address. The Clerk shall also enter judgment and close the case.

Dated this 23rd day of June 2026.

David G. Estudillo
United States District Judge

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) BY ORDERING A NEW BOND HEARING - 15